IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3209-FL

| | | |
|---|---|---|
| JOSEPH MICHAEL GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAPTAIN DEMITRIUS CLARK, | ) | |
| DONALD L. WHIDBEE, JOHN DOE, | ) | |
| OFFICER REGINALD RUSSELL, | ) | |
| SERGEANT GAIL H. BOYD, | ) | |
| CAPTAIN TOMMY CASTELLOE, and | ) | |
| LIEUTENANT MICHAEL DELOACH,[1] | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on defendants' motion for summary judgment (DE 129). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**STATEMENT OF THE CASE**

On October 17, 2011, plaintiff, a state inmate, brought this civil rights action pursuant to 42 U.S.C. § 1983, against defendants Sergeant Gail H. Boyd ("Boyd"), Captain Tommy F. Castelloe ("Castelloe"), Demitrius Clark ("Clark"), John Doe, Officer Reginald Russell ("Russell"), and Donald L. Whidpee ("Whidpee"). Plaintiff alleged defendants violated his rights pursuant to the Eighth Amendment to the United States Constitution because they interfered with his ability to

---

[1] Defendants' counsel provides the correct full names for the defendants in this action and the court's caption has been amended to reflect such changes. The clerk of court is DIRECTED to update the court's docket accordingly.

receive his special diet food tray by ordering him to remain seated while waiting for his tray in the cafeteria. Plaintiff stated that he was unable to comply with defendants' orders due to a medical condition, and was forced to leave the cafeteria without eating. Plaintiff also alleged that defendant Castelloe confiscated his date book and that defendant Boyd denied plaintiff four meals because plaintiff shared food with other inmates.

On May 10, 2013, defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that plaintiff's claim should be dismissed because he failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a). The court denied defendants' motion for judgment on the pleadings on November 12, 2013. Pursuant to a motion filed by defendants, the court reconsidered its November 12, 2013, ruling and dismissed without prejudice, pursuant to § 1997e(a), plaintiff's claim that defendant Castelloe confiscated his date book and that defendant Boyd denied plaintiff meals for sharing food.[2] Because the court dismissed plaintiff's sole claim against Castelloe, Castelloe was terminated as a defendant.

Plaintiff subsequently filed a motion to amend his complaint, which he later voluntarily withdrew on the grounds that the proposed amended complaint contained "unintentional errors." With permission from the court, plaintiff filed a second amended complaint on August 11, 2014. Plaintiff, in his second amended complaint, named previously dismissed defendant Castelloe and Lieutenant Michael Deloach ("Deloach") as defendants and alleged that these defendants also interfered with his meals. Plaintiff additionally supplemented the allegations of his original complaint to allege the following consequences of defendants' alleged interference with his special diet food tray: (1) "prolonged and extreme pain and unnecessary complications in the treatment of

---

[2] The court denied the remainder of defendants' motion for reconsideration.

his serious hemorrhoid condition;" (2) "the loss of numerous teeth due to [] inadequate nutrition;" (3) "the loss of over 30 pounds and diminished health;" (4) "headaches and/or dizziness after being denied two or more consecutive meals;" and (5) "an eating disorder in which [plaintiff] cannot store or save any extra food in his cell or he will eat it until he gets sick." (Am. Compl., Attach. pp. 12-13.) Plaintiff also alleged pendant North Carolina state law claims. Plaintiff subsequently filed a motion for a settlement conference.

On April 22, 2015, defendants Boyd, Castelloe, Clark, Deloach, Russell, and Whidbee filed a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. Defendants further argue that plaintiff's state law claims fail as a matter of law. Alternatively, defendants argue that they are entitled to the affirmative defense of qualified immunity. In support of their motion, defendants submitted the affidavit of defendant Clark and Bertie Correctional Institution physician assistant Peter B. Woglom ("Woglom"), as well as excerpts from defendants' discovery responses and plaintiff's medical records. Plaintiff responded to defendants' motion, and attached Bertie's Inmate Orientation Information Handbook, excerpts of defendants' discovery responses, and a letter. The court thereafter denied plaintiff's motion for a settlement conference on August 28, 2015.

**STATEMENT OF FACTS**

Except as where otherwise noted below, the undisputed facts are as follows. Plaintiff is a state inmate incarcerated within the custody of the North Carolina Department of Public Safety ("DPS"). (Clark Aff. ¶ 3.) Plaintiff was transferred to Bertie Correctional Institution ("Bertie") in July 2010. (Id.) The defendants in this case are correctional officers who were employed with DPS and worked at Bertie when plaintiff was housed at that location. (Id. ¶ 5.) At the time relevant to

3

this action, defendants Clark and Deloach were lieutenants, defendant Castelloe was a captain, defendant Boyd was a sergeant, and defendants Russell and Whidbee were correctional officers. (Id.) None of the named defendants were employed as health care professionals. (Id.)

This action involves the policy related to the distribution of meals in the Bertie cafeteria. Generally, mealtime at Bertie began for inmates when they were called to the cafeteria in groups of approximately 20-30. (Id. ¶¶ 7, 8.) After entering the cafeteria, inmates were required to sit for approximately 10-15 minutes until they were called to the window to retrieve their trays. (Id. ¶ 8.) Inmates then were required to remain seated for the duration of their meal and were not permitted to bring objects, such as pillows and cushions, into the cafeteria unless the inmate possessed a valid DC 490 medical accommodation form signed by a health care provider. (Id. ¶¶ 7, 11.) Anytime an inmate was prescribed a DC 490 by medical staff, the inmate was provided a copy of the DC 490 form to present to correctional officers. (Id. ¶ 12.)

Plaintiff alleged in his complaint that he suffers from a severe hemorrhoid condition, which prevented him from remaining seated in the cafeteria for meal distribution. (Compl. p. 4; Am. Compl., Attach. pp. 2-11.). On many occasions, Bertie correctional officers provided plaintiff direct orders to remain seated while waiting for his meal tray. If plaintiff refused to comply with the order, the officers then ordered plaintiff to leave the cafeteria. Accordingly, plaintiff asserts that he missed meals on the following dates because defendants ordered him to leave the cafeteria after plaintiff refused to remain seated during meal distribution due to his hemorrhoid condition: (1) defendant Clark on August 23, 2010, October 7, 2010, January 24, 2011, January 25, 2011, February 13, 2011, February 16, 2011, February 17, 2011, July 1, 2011, and July 15, 2011; (2) defendant John Doe on November 13, 2010, January 28, 2011, January 30, 2011, February 7, 2011, and February 9, 2011;

4

(3) defendant Deloach on November 23, 2010; (4) defendant Russell on January 26, 2011; (5) defendant Castelloe on February 12, 2011; (6) defendant Whidbee on February 21, 2011; and (7) defendant Jane Doe on August 29, 2011. (Pl's Resp. ((DE 134), pp. 6-7.) Plaintiff did not present defendants with a DC 490 authorizing him to either stand during mealtime or use a cushion on these dates. (Clark Aff. ¶ 11.)

In 2010 and 2011, Bertie medical staff treated plaintiff for both Gastroesophageal Reflux Disease ("GERD") and hemorrhoids and provided plaintiff with DC 490 medical accommodations for both conditions. (Woglom Aff. ¶¶ 3, 4, 6, 7, 8.) Relating to plaintiff's GERD, medical staff permitted plaintiff two extra pillows on September 20, 2010. (Id. ¶ 7; Ex. A, p. 2; Pl.'s Resp. Attach. p. 89, 90.) Medical staff subsequently counseled plaintiff on several occasions that the extra pillows were for his GERD and were not to be taken to the cafeteria. (Id.. Ex. A, pp. 1, 2.) In response to a sick call request asking for clarification as to the purpose of a DC 490 issued to plaintiff permitting him to possess two extra pillows, the triage nurse instructed plaintiff to sit on alternating buttocks to keep the pressure off of his hemorrhoids. (Pl.'s Resp. Attach. pp. 98, 102.) Then, on February 22, 2011, Bertie medical staff noted in plaintiff's medical records that plaintiff could not bring a pillow to the cafeteria and that defendant Castelloe and Sergeant Hudson were made aware of such instruction. (Woglom Aff. Ex. A, p. 1; Pl.'s Resp. Attach., p. 111.) On March 10 and 16, 2011, medical staff again counseled plaintiff that his extra pillow was to be used for his GERD and not his hemorrhoid condition. (Woglom Aff. Ex. A, p. 3 and Pl.'s Resp. Attach. p. 103.)

Regarding his hemorrhoid condition, plaintiff experienced a thrombosed external hemorrhoid on May 23, 2011. (Am. Compl., Attach. pp. 8-9.) Medical staff at Bertie and later Ahoskie hospital

5

provided plaintiff treatment for his condition. (Am. Compl., Attach. p. 9; Pl.'s Resp. Attach. pp. 31-32.) On both May 26 and 31, 2011, medical staff issued plaintiff a DC 490 permitting him to stand during meals in the cafeteria for a period of one week. (Woglom Aff. ¶ 8 and Ex. B., pp. 2, 3; Pl.'s Resp. Attach. p. 22.) Medical staff, additionally, authorized plaintiff to use an invalid cushion in May 2011, for one month at a time until June 24, 2011. (Woglom Aff. ¶ 8 and Ex. B, p. 1, 3 and Pl.'s Resp. Attach. pp. 23, 25, 26.) At some point, plaintiff was transferred to Central Prison where Central Prison medical staff performed a hemorrhoidectomy on August 29, 2011. (Am. Compl., Attach. p. 11; Pl.'s Resp. Attach. p. 47, 57, 63, 65, 70.)

Plaintiff alleged in his amended complaint that at mealtime on August 29, 2011, defendant Jane Doe gave him a direct order to sit and wait for his food tray. (Am. Compl., Attach. p. 11.) Plaintiff responded by explaining that "he just had surgery on his rectum. She was unmoved and ordered [plaintiff] to leave the chow hall without eating anything. [Plaintiff] left as ordered." (Id.) Plaintiff asserts that he had a valid DC 490 at the time permitting him to remain standing during mealtime, but there is no such medical order for that date in the record.[3] Plaintiff states that because he could not eat for the previous 24 hours due to his surgery, plaintiff went without a meal for a total of 48 hours. (Id.)

In September 2011, medical staff authorized plaintiff to use an invalid cushion for a period of one year. (Woglom Aff. ¶ 8 and Ex. B, pp. 5-6; Pl.'s Resp. Attach. pp. 21, 24.) Plaintiff was transferred from Bertie in May of 2013. (Clark Aff. ¶ 3.)

---

[3] The court notes that there is a notation in plaintiff's medical records stating that Bertie's physician assistant was notified of plaintiff's return form Central Prison, following his surgery, at approximately 8:25 p.m. on August 29, 2011. (Pl's Resp. Attach. p. 149.)

6

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Defendants raise the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

   1. Prison Policy

Prison officials may restrict an inmate's constitutional rights through prison regulations. See Turner v. Safley, 482 U.S. 78, 89 (1987). Defendants argue that Bertie's policy requiring

7

inmates to remain seated in the cafeteria while waiting for the distribution of food trays and prohibiting inmates from bringing outside materials into the cafeteria does not violate the Eighth Amendment. Defendants contend that such policy is reasonably related to legitimate penological interests of security because it facilitates the maintenance of order, minimizes security risks, and prevents inmates from engaging in the prohibited conduct of food sharing. (See Clark Aff. ¶ 7.)

In Turner, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. To determine whether a regulation relied upon by a defendant is constitutionally permissible, the court must consider the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; and (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Id. at 89-90. When applying these factors, the court must give considerable deference to prison officials' administrative decisions. See Bell v. Wolfish, 441 U.S. 520, 547 (1979); Taylor v. Freeman, 34 F.3d 266, 268 (4th Cir. 1994) ("[A]bsent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons . . . ."). An inmate bears the burden of proving that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079,1082 (4th Cir. 1993).

Applying the Turner factors to the instant action, the court first determines whether there is a valid, rational connection between the challenged policy and the legitimate governmental interest of prison security. Bertie has a legitimate interest in requiring inmates to remain seated during mealtimes and prohibiting outside objects in the cafeteria in order to facilitate institutional security

8

and safety. See Gates v. Rowland, 39 F.3d 1439, 1446-1447 (1987); see also, Smiley v. Stevenson, No. 0:09-2039, 2010 WL 2902778, at *4 (D.S.C. Apr. 30, 2010) ("Further, based on the record it is undisputed that permitting talking in the cafeteria decreases efficiency and security. Finally, there is no indication in the record of any available alternative that would serve the interests of this limited prohibition."), mem. and recomm. adopted by, No.0:09-2039-TLW-PJG, 2010 WL 29002756 (D.S.C. July 22, 2010); Abdul-Khabir v. Green, No. Civ. A. 2:02CV894, 2003 WL 24054700, at *5 (E.D. Va. Dec. 15, 2003) (granting defendants motion for summary judgment where the prison had a policy, for security reasons, of not allowing inmates to return to the dining hall after exiting), aff'd, 91 F. app'x 877 (4th Cir. 2004). If inmates were permitted to stand in the cafeteria or bring in outside objects, such actions could present security risks in that it would be more difficult to monitor the inmates in a potentially chaotic environment and outside items could be used as weapons. Thus, the first Turner factor weighs in favor of finding no Eighth Amendment violation.

The court now moves to the second Turner factor, whether there are alternative means of exercising the right that remain open to prison inmates. Here, the record reflects that inmates' constitutional rights were minimally impacted by the Bertie policy because there are medical exceptions to the policy where an inmate has obtained a proper DC 490 to accommodate his medical condition. In fact, medical staff, at times, provided plaintiff with DC 490 forms which either permitted him to stand in the cafeteria or to sit on a cushion. Thus, the second Turner factor weighs in favor of finding no Eighth Amendment violation.

The court now turns to the third Turner factor, the impact the accommodation of the asserted constitutional right would have on guards and other inmates, and on the allocation of prison resources generally. Requiring inmates to obtain a DC 490 from the medical department prior to

9

obtaining an accommodation in the cafeteria minimally impacts either guards or inmates in that it involves a relatively routine procedure. The accommodation further promotes fairness in that it places the burden on medical staff to determine whether an inmate is in need of additional assistance in the cafeteria. Thus, the third Turner factor weighs in favor of finding no Eighth Amendment violation. After evaluating the Turner factors in connection with Bertie's policy requiring inmates to remain seated in the cafeteria and prohibiting inmates from bringing outside objects into the cafeteria, the court concludes that the instant policy does not violate plaintiff's Eighth Amendment rights.

To the extent plaintiff argues that the above-referenced policy does not exist because it is not in Bertie's inmate handbook or in any other written form, such argument fails because the validity of a prison policy is not dependent upon whether such policy is written or oral. See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("Talib's argument has no merit inasmuch as the validity of prison policies is not dependent on whether they are written or verbal."). Rather, the determination as to whether a policy exists is whether the record supports a finding that a policy exists. See id. Here, plaintiff's medical records support a finding that the policy at issue existed because the records include medical orders providing plaintiff a DC 490 to permit him to stand during mealtime or permission to use an invalid cushion. (See Woglom Aff. ¶ 8; Ex. B, pp. 2-4, 6.) Further, medical staff counseled correctional staff that plaintiff was not permitted to use his cushion, prescribed for his GERD treatment, in the cafeteria. (Id. ¶ 7 and Ex. A.) Finally, plaintiff, himself, asserts in his amended complaint that medical staff denied him meals "for minor rule violations."[4] (Am. Compl.,

---

[4] Plaintiff, additionally, makes the conclusory allegations that Captain Vaugh did not require inmates to sit and wait for their tray "for the first four months that the other rotation ([defendant] Castelloe) did." (DE 99, p. 21.) Plaintiff, however, does not provide any dates on which Captain Vaugh permitted plaintiff to stand in the cafeteria, and cont. from p. 10, it is not clear whether plaintiff possessed a valid DC 490 during that

Attach. p. 14.) Based upon the foregoing, the court finds that plaintiff's argument is meritless, and that the challenged policy does not violate plaintiff's constitutional rights. Thus, defendants are entitled to qualified immunity.

    2.    Eighth Amendment Claim

Plaintiff alleges that the conditions of his confinement created by defendants' conduct violated his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution.[5] "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (internal quotation omitted). The first prong is an objective one—the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"—and the second prong is subjective—the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (quotations omitted).

The court focuses its analysis of this claim on the subjective prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to plaintiff's prison conditions. To meet the subjective prong, a plaintiff must show that the official acted with deliberate indifference. See, e.g., Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Strickler, 989 F.2d at 1379. "[D]eliberate indifference entails something more than mere negligence, [but it] is satisfied by

---

time period. Further, Captain Vaugh's alleged treatment of plaintiff does not foreclose the fact that there was a policy in place requiring inmates to sit while in the cafeteria, particularly in light of the evidence in the record which reflects that such policy did exist.

    [5] Plaintiff makes clear that he is not asserting an Eighth Amendment claim relating to his medical care. (See DE 96, p. 3.)

11

something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); see Farmer, 511 U.S. at 837; Estelle v. Gamble, 429 U.S. 97, 104–05 (1976).

As stated, Bertie had a policy requiring inmates to remain seated while in the cafeteria and prohibiting inmates from bringing outside items into the cafeteria. It is undisputed that plaintiff did not present defendants Clark, Whidbee, John Doe, Boyd, Castelloe, or Deloach with a valid DC 490 medical authorization form permitting him to stand in the cafeteria or to bring a cushion into the cafeteria on the dates at issue in this action. (See Clark Aff. ¶ 11.) The record further reflects, and plaintiff does not dispute, that these defendants ordered plaintiff to leave the cafeteria only after he refused to follow prison rules by refusing to sit while eating or while waiting for his food tray. (See Am. Compl., Attach. pp. 2-22.) Aside from enforcing the policy at issue, defendants in no way interfered with plaintiff's ability to obtain meals. Rather, it was plaintiff's own decision to leave the cafeteria without eating. Because plaintiff's alleged missed meals were a result of his failure to comply with a valid prison rule, plaintiff has failed to establish that defendants Clark, Whidbee, John Doe, Boyd, Castelloe, or Deloach acted with deliberate indifference. See Rodriguez v. Briley, 403 F.3d 952, 952-953 (7th Cir. 2005) ("As soon as Rodriguez puts his belongings in the storage box, he can leave his cell and go to the cafeteria. So he was not punished, and so we need not decide whether, or how many, skipped meals constitute a cruel and unusual punishment for violation of a valid prison regulation. Rather, by failing to comply with a reasonable condition on being allowed to leave his cell, and as a result missing out on meals, Rodriguez punished himself."); Talib, 138

12

F.3d at 215 ("Thus, for the same reasons that we believe a policy requiring prisoners on look-down to kneel facing the wall with their hands behind their backs when served meals is reasonably related to a legitimate penological interest, the action of an individual guard requiring such conduct is likewise constitutionally permissible."); see also, Freeman v. Berge, 441 F.3d 543, 545 (7th Cir. 2006) (affirming district court's finding of no constitutional violation where the plaintiff was denied his meals when he refused to remove a sock from his head and when he refused to wear pants during meal distribution, which violated the prison's mealtime rules).

Plaintiff's Eighth Amendment claim further is thwarted by the fact that there is evidence that defendants Clark, Whidbee, John Doe, Boyd, Castelloe, and Deloach were following Bertie medical department orders. Specifically, on February 22, 2011, Bertie medical staff counseled correctional officers, including defendant Castelloe, that plaintiff was not permitted to use his prescribed extra pillow for plaintiff's GERD condition in the cafeteria and instead instructed plaintiff as to how to sit while experiencing problems with hemorrhoids. (See Woglom Aff. Ex. A, p. 1, 3 and Ex. D. p. 24.) Moreover, plaintiff was receiving regular medical care from Bertie Medical staff during the relevant time period. (See Woglom Aff. Ex. A, B.) Defendants, as correctional officers, were not in a position to interfere or alter Bertie medical staff's course of treatment and were entitled to rely on the medical staff's prescribed course of treatment. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); see also, Shipley v. Department of Justice Bureau of Prisons, No. 5:10–CT–3153–FL, 2012 WL 3887096, at *5 (E.D.N.C. Sept. 7, 2012) ("As a nurse, Daniel was entitled to rely on a doctor's medical judgment as to the appropriate course of treatment for a patient's conditions and cannot override the doctor's orders.") (internal quotation and citation omitted). Based upon the

13

foregoing, plaintiff failed to establish that defendants Clark, Whidbee, John Doe, Boyd, Castelloe, or Deloach acted with deliberate indifference.

As for plaintiff's contention that defendant Jane Doe gave him a direct order to sit while waiting for his food tray on August 29, 2011, the date of his hemorrhoidectomy, plaintiff's claim is unsupported by the record. Although plaintiff contends that he had a valid DC 490 providing him an accommodation in the cafeteria on such date, plaintiff's medical records reflect that a DC-490 which permitted him to bring a cushion to the cafeteria was not provided to plaintiff until September of 2011. (Woglom Aff. ¶¶ 8-9 and Ex. B, p. 6.) Moreover, Bertie medical staff was not even aware of plaintiff's return from Central Prison until approximately 8:25 p.m. on August 29, 2011. (Pl.'s Resp. Attach. p. 149.) Further, plaintiff does not allege that he actually presented defendant Jane Doe with a valid DC 490 on August 29, 2011. (See Am. Compl., Attach. p. 11.) Thus, there is no evidence that defendant Jane Doe acted with deliberate indifference, and plaintiff has failed to establish a constitutional violation.

Based upon the foregoing, the record reflects that defendants did not act with deliberate indifference to plaintiff's prison conditions because they were simply enforcing a prison policy and following the direction of medical staff. Because plaintiff has not produced any evidence to show that any defendant knew of and disregarded any condition, plaintiff fails to establish a constitutional violation. Thus, defendants are entitled to qualified immunity.

3. Supplemental Jurisdiction

To the extent plaintiff alleges any negligence-related state law claims the court declines to exercise jurisdiction over such claims. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original

14

jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 F. App'x 141 (4th Cir. 2003) . The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.[6]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE 129) is GRANTED. The court DISMISSES plaintiff's state law negligence claims without prejudice. The clerk of court is DIRECTED to amend the court's docket to reflect the name changes as set forth above. The clerk also is DIRECTED to close this case.

SO ORDERED, this the 21st day of September, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[6] Pursuant to 28 U.S.C. § 1367(d), the state statute of limitations period shall be tolled for a period of at least thirty (30) days after dismissal. Estate of Manook v. Research Triangle Institute, Intern, No. 5:10-CV-72-D, 5:10-CV-73-D, 2010 WL 3199874, at *5 (E.D.N.C. Aug. 12, 2010); Coleman v. Smith, No. 3:08-3675-JFA, 2010 WL 569662 at *4 n.3 (D.S.C. Feb. 11, 2010) ("Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for a period of at least thirty days after dismissal."); but see, Katema v. Midwest Stamping Co., 180 F. App'x 427, 428 (4th Cir. 2006) (finding that the district court abused its discretion in declining to exercise its supplemental jurisdiction under § 1367 because plaintiff's state law claims would be time-barred in state court and because the court had diversity jurisdiction over plaintiff's claim).